Johnson, C. J.
Two questions of fact in this case are presented by the record for determination :
1. Was Joseph Briggs the husband of Martha Briggs at the time of her death ?•
2. Bid Martha Briggs have issue by a former marriage ?
The court below found both these •questions in favor of Briggs, that is, it found he was the surviving husband of Martha Briggs, and that she did not have issue by a former marriage. And as matter of law, it was therefore adjudged that he was entitled to curtesy in his wife’s estate, notwithstanding she left issue, Mary Jane, the grantor of the plaintiff in error.
Two errors are assigned for the reversal of this judgment.
1. It is claimed that in view of the fact that fhe marriage' is asserted by the alleged husband, and that that relation in *480 fact is essential to liis claim, the evidence offered was insufficient to warrant the court in finding such marriage.
2. That as matter of law, the deceased wife having left issue, though not by a former marriage, capable of inheriting her estate, that issue, though illegitimate, brought the estate within the scope and meaning of the 17th section of “ an act regulating the descent and distribution of personal estate,” as amended March 1, 1869 (66 O. L. 21).
1st. As to the bind of proof and its sirfficieney to establish the marriage, in an action to recover possession of an estate by the curtesy.
It is conceded that evidence of cohabitation as husband and wife, of mutual recognition by the parties, as such, and of such reputation in the circle in which they lived, is competent as tending to prove the marriage ; but it is claimed that in a case like this, more positive and direct evidence, such as is required in prosecutions for bigamy, and in actions for criminal conversation, should be required. It is said marriage de jure, is the essential basis of the right infringed in the one case, and is the muniment of title in the other.
It is now too well settled to admit of dispute, that in all civil actions, when the rights to succession of an estate depends on the existence of a marriage, it may be proved by reputation, declarations and conduct of the parties. 2 Greenl. §§ 461, 462; Hubback’s Evidence of Succession, 239-248; Commonwealth v. Hurley, 14 Gray, 411; Gaines v. Rolf, 12 How. (W. S.) 472 ; Scribner on Dower, chap. ix.
2d. Assuming that there was no error in finding as a fact that Briggs was the surviving husband, and that the daughter of the deceased wife was illegitimate, the question of law which arose is, was the daughter, within the terms of the proviso of-the act of 1869, by which the right of the surviving husband to curtesy is defeated when there is issue by a former marriage.
The loth section of the act of 1831 (33 Ohio L. 43), regulating descents and distribution of personal estate, provided: “ That nothing in this act shall be so construed as to affect the right which any person may have to any estate by eurtesy *481 or in dower in any estate of inheritance of any deceased person.” By the 13th section of the same statute: “ bastards shall be capable of inheriting, or of transmitting inheritance, on the part of the mother, in like manner as if born in lawful wedlock.”
The curtesy under that statute, not to be affected, was that known at common law, which could not become consummate, without birth of issue. By section 17 of the act of 1853, it was provided that, “ surviving husbands, whether there has been issue born during coverture or not, shall be entitled to the estates of their deceased wives by the curtesy.”
As the law then stood, neither the want of issue of the marriage, nor the existence of children or legal representatives by a former marriage, nor of illegitimate heirs of the deceased wife, defeated the estate by the curtesy.
For reasons of public policy the legislature enlarged the surviving husband’s rights to curtesy in the estate of the deceased wife and extended it to all cases of surviving husbands whether there was issue or not. Neither the act of 1831, nor the act of 1853, nor the amendment of 1869, hereafter to be noticed affected the marital rights of the husband, during coverture, whether it be curtesy expectant growing out of the marriage merely, or curtesy initiate arising from birth of issue.
It is the curtesy of a “ surviving husband ” in the estate of a deceased wife, to which these statutes relate.
By the act of 1846, (1 S. & C. 693 a) this interest of the husband in the estate of the wife during coverture, was exempted from process for the payment of his debts, during the life of the wife, or the life or lives of the' heir or heirs of her body, and all conveyances of such interest during coverture were declared to be void, unless duly executed by both husband and wife as required by the statute regulating the execution and acknowledgment of deeds. By the acts of 1861 (1 Saylor’s Stat. 62) and of 1866 (2 Saylor’s Stat. 947)} the real estate, legal or equitable, belonging to a woman at her marriage, or coming to her during coverture by conveyance, or by purchase with her separate money or means, is made her, *482 separate property and under her sole control, but it is declared that this shall not affect the curtesy of the husband “ in the real property of his wife after her decease.” It thus ■appears to be the fixed policy of the state to preserve the right to curtesy consummate.
Next in chronological order came the act of 1869 (66 Ohio L. 21) which is the re-enactment of the act of 1853 relating to curtesy with this proviso : “ provided however, that if any deceased wife shall leave issue or the legal representative of such issue by a former marriage, her surviving husband shall not be entitled to an estate by the curtesy in the interest of such issue or the legal representative of such issue iii her estate, unless it came to her by deed of gift from him, or by devise or deed of gift from his ancestors. These acts show how careful the legislature has been, not only to preserve the surviving husband’s curtesy as it existed at common law, but to enlarge it even when his marital right during coverture is taken away.
Now the claim is, that the loth section as amended (64 O. L. 105) giving bastards capacity to inherit and transmit inheritance on the mother’s side, the same as if born in lawful wedlock, and the 17th section as amended (66 O. L. 21), are statutes in pari materia and must be construed together, and that if this is done-, the proviso to the amended section 17 would read as if the words, “ issue by a former marriage,” read, “issue capable of inheriting from the deceased wife.” It may well be doubted, if, strictly speaking, the two sections are in pari materia. In a general sense, as relating to the subject of descents and distributions, this may be so, but in a more accurate sense, as relating to the rights of bastards to inherit, and of surviving husbands to curtesy, they are not.
Section 15, being section 13 of the act of 1831, which is prior in point of time, was intended to give to bastards the right to inherit or transmit inheritance on the part of the mother. At that time and until 1853, the husband’s curtesy consummate was the same as at common law, and section 15 of the act of 1831 expressly provided that nothing in the act (which included this provision in favor of bastards), should be ^so construed as to affect this estate by curtesy.
*483 This latter clause is found also in the act of 1853, in the amendment of 1869, and in the revision of the statutes, section 4176.
It expressly takes away from the court the power to give such a construction to the bastardy provision as will affect the surviving husband’s estate by the curtesy. If, therefore, we should give to section 15 of the act of 1853, as amended in 1867, the construction contended for, it would defeat the surviving husband’s estate to curtesy, as expressly given by section 17.
The amended section 17 (66 O. L. 21), gives, in unambiguous terms, curtesy to the surviving husband in all cases, except when the deceased wife left issue or a legal representative of such issue by a former marriage.
It also expressly declares that neither section 15, as amended, nor any other provision of the statute relating to descents and distribution, shall be so construed as to affect this right.
The attention of the legislature as appears, was directed to this question, and it has said in language too plain to be construed, that although bastards" may inherit from the mother, yet this is not to affect the estate by the curtesy.
Again, down to 1869, the husband was entitled to curtesy, though the wife did leave issue by a former marriage, and though she might have left issue not born in lawful wedlock, capable of inheriting, even when the estate came from her former husband or his ancestors, though there was no issue of the last marriage. This was thought to be inequitable, when there were children of a former marriage, and where the estate was not the gift of the surviving husband, or the devise or gift of his ancestors, and so the proviso took away from him the right to curtesy in such cases.
The proviso is a limitation of his right, as it had existed since 1853, indeed as it had always existed, but it is only taken away when there is issue by a former marriage. It must have been in the legislative mind that bastards could inherit and transmit inheritance on the part of the mother. Having this in mind they used a term clearly excluding them from the class of heirs that would defeat the curtesy.
*484 To give the words, “provided, however, if any deceased wife shall leave issue or legal representative of such issue by a former marriage,” the construction contended for would be to eliminate from the statute the significant words, “ by a former marriage,” or it would add to them the additional limitation “ or leaving illegitimate issue.”
This proviso is a limitation or exception to a right conferred by the general provision of the section. Its effect is to be limited to cases clearly falling -within its term.
In Woodbury v. Berry, 18 Ohio St. 462, where the court was convinced that certain words were by mistake omitted in copying the bill before its passage, said : “ But notwithstanding all this, ita lex seripta est, the language as it stands, is clear, explicit and unequivocal. It leaves no room for interpretation for nothing in the language is doubtful. It is our legitimate function to interpret legislation, not to supply omissions.”
Courts must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, even though the consequences should be to defeat the object of the act. Smith on Stat. Const. 714; Maxwell on Interp. of Stats, p. 2, § 2.
In the case before us we cannot suppose it was intended to put illegitimate issue of the deceased wife on au equality with legitimate, by a former marriage, in their power to defeat the right of a surviving husband to his curtesy ' in an estate which most likely came from the former husband. While bastard issue may justly inherit from their mother as if born in lawful wedlock, there is no apparent reason why they should defeat the curtesy of a surviving husband. The intention of the proviso is manifestly limited tó cases of issue by a former.marriage where the estate did not come to the wife from the husband or his ancestors.

Judgment affirmed..